In re BEAL'S ESTATE.  BEAL et al. v. HANSEN et al.

No. 7369.   Decided February 8, 1950.   (214 P. 2d 525.)

See 69 C. J., Wills, sec. 1368.  Wills, intention of testator as to, see note, 57 Am. Jur. 726.

*Dilworth Woolley,* Manti, for appellants.

*William L. Beezley,* Salt Lake City, *Carvel Mattsson,* Richfield, for respondents.

WOLFE, Justice.

On March 13, 1941, Thomas A. Beal executed his last will and testament, devising and bequeathing to his wife, Ida Peterson Beal, all his real and personal property except his professional library which he bequeathed to the School of Business of the University of Utah and to Snow College. He also appointed his wife executrix. In the fifth and last paragraph of his will he provided:

"In the event that my wife and I shall perish in a common catastrophe, or disaster, then, and in such event, I give, devise, and bequeath to the President of the University of Utah for the School of Business the sum of $500.00, and to the President of Snow College a like amount, for the purchase of books in Business and Economics, for the use and benefit of said schools in building up their libraries. And in such case of death, I give, devise, and bequeath all the rest, residue, and remainder of my property, both real and personal, of whatever kind the same may be, or wherever situated, or to which I may be entitled, to my nearest of kin and my wife's nearest of kin. That is to say, to our brothers and sisters, of the full blood, share and share alike, it being understood that the children of any said brother or sister now dead, or who may predecease us, shall stand in the place of such deceased brother or sister and take a one-tenth interest in the remainder therein devised and bequeathed. Further, in such case, I nominate and appoint Carvel Mattsson the Executor of my list Will and Testament, to serve without bond, and I hereby revoke any and all former wills by me made."

The testator died on January 3, 1948; his wife predeceased him, dying on January 6, 1945. The will was admitted to probate, but the court below held that the provisions of paragraph five were inoperative and decreed that the testator died intestate as to all his property with the exception of his professional library. The testator left no children or parents surviving him and hence the property was distributed, in accordance with the laws of succession of this state, to his brothers and sisters of the whole

and half blood who survived him, and to the children of his deceased brothers and sisters.

The appellants, who are heirs of the full blood of the testator and of his wife, prosecute this appeal contending that the lower court erred in not distributing the estate in accordance with paragraph five of the will. The respondents are heirs of the half blood of the testator who participated in the distribution of the estate as made by the court below.

The appellants urge that it was the testator's intent that his wife should take all his property, except his professional library, if she survived him, but that if he and his wife died in a common disaster, *or if she predeceased him,* the property was to be distributed to the persons and institutions designated in paragraph five; that the testator did not intend to make death in a common disaster a condition upon which the property should vest in the legatees named in paragraph five; but that the only condition which the testator had in mind was that his wife should not outlive him to need his property. On the other hand, the respondents contend that paragraph five is clear and unambiguous in its mandate that the property of the estate, except the testator's professional library, should be distributed to the persons and institutions named in paragraph five only in the event that the testator and his wife die in a common disaster, and since that event did not occur and since the testator's wife predeceased him, the property was properly distributed by the lower court according to the laws of succession.

In support of the appellants' contention they refer us to a decision from a surrogate's court in New York, *In re Hardie's Estate,* 176 Misc. 21, 26 N. Y. S. 2d 333, 335; affirmed without opinion in 263 App. Div. 927, 33 N. Y. S. 2d 389; appeal denied 263 App. Div. 1061, 34 N. Y. S. 2d 816, where a testator devised and bequeathed to his wife all his estate, but provided that in the event his wife should die

simultaneously with him or closely thereafter, most of the estate should go to certain named charities. The wife died fourteen months before the testator's demise and, as against the objection of his heirs that the will was ineffective for any purpose, the court held that it was the intention of the testator that his estate should be disposed of as set forth in the will in the event that he and his wife died simultaneously or in the event that she predeceased him. The surrogate reasoned:

"It is evident that [the testator] did not desire to die intestate, else he would not have made a will, or having made it, he would have destroyed or revoked it. It is also evident that he did not intend to make his relatives the object of his bounty in the event of his dying simultaneously with his wife. This being apparent and clearly reflecting the attitude of the testator toward his relatives, is it not reasonable to presume that this was his attitude and his feeling in any event, and particularly under the situation as it subsequently developed? Having designated his beneficiaries under his will, it does not appear to me that [the testator] chose these beneficiaries only on the event of his dying simultaneously with his wife. I believe he intended them to be his beneficiaries in any event and if he had any intention to the contrary, he could and would have made another will for he lived fourteen months after the death of his wife."

Testimony as to the circumstances existing in the home of the testator and his wife was received in evidence as was testimony tending to show that with the exception of the visit of a nephew on one occasion, the relatives of the testator never visited him. The surrogate relied upon the rules of construction that (1) the intent of the testator as expressed in the will is, above all other rules of construction, of primary importance, and (2) as between two possible constructions, the construction which avoids intestacy is preferred.

The two rules of construction employed in the *Hardie* case have, in substance, been codified in this state. Sec. 101-2-1, U. C. A. 1943, provides:

"A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible."

Sec. 101-2-10, U. C. A. 1943, provides:

"Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy."

In the instant case, the express language of the will covers only two of three possible fact situations respecting the time of the testator's death in relation to the time of his wife's death. Had the testator's wife survived him or had she perished with him in a common disaster, the testator's intent as to the disposition of the estate is clear. But the testator's intention in the advent of the death of his wife prior to his demise is not expressly made known nor can it fairly be implied from a language of the will. The rule of construction that the intent of the testator must be carried out does not authorize courts to make a new will to conform to what they think the testator intended, but the intent of the testator must be ascertained from the will as it stands. *In re Estate of Sowash,* 62 Cal. App. 512, 516, 217 P. 123. Nor does the rule that testacy rather than intestacy is preferred relieve courts from the obligation to construe the language of the will according to the legal effect of the words used. *In re Searl's Estate,* 29 Wash. 2d 230, 186 P. 2d 913, 173 A. L. R. 1247. There is absolutely nothing in the will that can justify the appellants' contention that the testator intended the estate to be distributed to his and his wife's heirs of the full blood in the event that she predeceased him. Ingenious conjecture would have to be indulged in if we were to hold with the appellants. The will is silent upon the possibility of the wife predeceasing the testator. The fact that the testator made no provision on this subject is indicative that he did not anticipate this contingency. What his intent was after his wife's death we have no means of knowing

except for the fact that he allowed the will to stand as originally executed.

We are not impressed by the reasoning of the surrogate court in the *Hardie* case, supra. Because a testator directs that his estate shall go to certain legatees in the event that his wife should die simultaneously with him or closely thereafter, and because he allows his will to stand as written after the death of his wife does not necessarily mean that it is also his intention that the same legatees should succeed to his estate at his death fourteen months later. There are equally cogent reasons why the testator's intent would not be the same in both contingencies. No useful purpose would be served to here discuss those reasons. It is sufficient to point out that the surrogate ordered the estate distributed, not according to what was written in the will, but according to what the surrogate thought would have been the testator's desire had he expressed it in the will. In his effort to find the testator's intent and avoid intestacy, the surrogate ignored other well recognized rules of construction. We are limited in our interpretative powers by what the testator has written.

The result reached by the Court of Chancery of New Jersey in *Glover* v. *Reynolds*, 135 N. J. Eq. 113, 37 A. 2d 90, 91, affirmed for reasons stated in the court below in 136 N. J. Eq. 116, 40 A. 2d 624, is supported by better reasoning than that found in the *Hardie* case. In the *Glover* case a husband and his wife left mutual wills similar in their provisions, except that the wife was the beneficiary in the one and the husband in the other, and the will of the wife provided that in the event her husband and herself died simultaneously, her estate should go to certain named beneficiaries. The wife outlived the husband by several months and the beneficiaries named in her will contended that although the husband and wife did not die simultaneously, nevertheless, her will manifested an intent to give them her estate because otherwise her estate would not be disposed of by

the will, contrary to the "presumption against intestacy." It was held that the testatrix appeared to have in mind only two possible situations, to wit, that she would predecease her husband or that they would die simultaneously, or, at least, contemporaneously, and that her failure to anticipate the contingency which did occur, or to execute a new will after his death, cannot be cured by, in effect, writing a new will under the guise of construing the will.

The *Glover* case was relied upon by the Supreme Court of Washington *In re Estate of Searl,* supra, where a husband and wife both executed wills leaving their estates to each other and both providing that in the event that they should meet death at the same time, or approximately the same time, the estates should be distributed to the wife's sister. The husband lived for forty-seven days after the death of his wife. It was held that their deaths did not occur at approximately the same time and hence the property of both estates passed to the heirs at law of the husband, as against the contention of the wife's sister that the husband and wife intended that all their property should be enjoyed by the survivor but that if the survivor failed to make a new will, all the property was to go to the wife's sister.

It cannot be successfully maintained here, as argued by the appellants, that the contingency referred to in paragraph five, viz. death of the testator and his wife in a common disaster or catastrophe, was the reason or occasion for making the disposition and was not intended to be a condition upon which the disposition was to become effective. The cases cited by the appellants holding that phrases in wills such as

"in case of serious accident, I give   *   *   *"

and

"in case of sudden death and unexpected death, I direct   *   *   *"

do not condition the legacies therein upon the sudden or accidental death of the testator, but that such phrases are only the reasons or occasions which prompted the testator to make his will, are not in point. In those cases the testator was apparently anticipating the way in which he might meet death, and the courts correctly reasoned that how a testator meets death could not reasonably affect his testamentary desires. But the same reasoning does not apply in the instant case because the testator made the disposition to the appellants in relation to the proximity of his death with the death of his wife. The proximity of their deaths could have reasonably been a consideration in his desire to give most of his estate to the appellants who are his and his wife's closest blood relatives.

Nor can it be successfully maintained that death of the testator and his wife in a common disaster is a condition precedent only to the vesting of the two $500 bequests to the two schools named in the first sentence of paragraph five. It is clear that the condition contained in the first sentence was meant to affect every other disposition made in that paragraph.

The decree of final distribution made below is affirmed. Costs to the respondents.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WADE, J., not participating.